Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| DAVI DEVELOPMENT CORP.<br><br>Apelante / Peticionario<br><br>v.<br><br>MG GENERAL CONTRACTORS, INC., y otros<br><br>Apelados / Recurridos | TA2025AP00239<br><br>consolidado<br><br>TA2025CE00372 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>CG2021CV00215 (702)<br><br>Sobre: Acción Resolutoria y Reconvención |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de marzo de 2026.

Comparece ante nos, DAVI Development Corporation ("DAVI" o "Apelante-Peticionaria") mediante *Recurso de Apelación* en el caso TA2025AP00239, presentado el 13 de agosto de 2025. Nos solicita que revoquemos la *Sentencia* emitida y notificada el 25 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas ("foro primario" o "foro *a quo*"). Por virtud de la aludida *Sentencia*, el foro primario declaró *Ha Lugar* las mociones de sentencia sumaria instadas por MG General Contractors, Inc. ("MG"), CCAM Developers, LLC ("CCAM") y Haciendas Village, LLC ("Haciendas Village") (en conjunto, los "Apelados-Recurridos"). En consecuencia, desestimó con perjuicio la demanda enmendada instada por DAVI contra los Apelados-Recurridos.

Asimismo, el foro *a quo*, declaró *Ha Lugar* la reconvención radicada por CCAM, y, por consiguiente, condenó a DAVI al pago de doscientos treinta y dos mil cuatrocientos cuarenta y siete mil dólares ($232,447.00) por incumplimiento de obligaciones.

De igual forma, el 28 de agosto de 2025, DAVI presentó *Recurso de Certiorari* en el caso TA2025CE00372. Al amparo de este, nos solicita la revocación de la *Resolución* dictada el 3 de julio de 2025,

notificada el 7 de julio del mismo año y las *Resoluciones* dictadas y notificadas el 14 de julio de 2025. Por virtud de las aludidas determinaciones, el foro primario aprobó los respectivos memorandos de costas presentados por los Apelados-Recurridos. Cónsono con lo anterior, el foro *a quo* ordenó a DAVI a realizar los siguientes pagos por concepto de costas y honorarios de abogado: sesenta y cuatro mil cuatrocientos noventa y dos dólares con seis centavos ($64,492.06) a Haciendas Village; cincuenta y cinco mil trecientos veintinueve dólares con sesenta y siete centavos ($55,329.67) a CCAM y ciento cuatro mil seiscientos veinticinco dólares ($104,625.00) a MG.

Por los fundamentos que expondremos a continuación, en el caso **TA2025AP00239**, *revocamos* la *Sentencia* apelada. En cuanto al caso **TA2025CE00372**, *expedimos* el auto de *certiorari* y *revocamos* los dictámenes recurridos.

## I.

El 28 de enero de 2021, DAVI presentó *Demanda* sobre cancelación y revocación de servidumbre de paso contra MG, CCAM, Haciendas Village y ciertos demandados de nombre ficticio.[1] Mediante esta, DAVI adujo que era dueña de la finca 63439, denominada como "Parcela B", la cual se encuentra localizada en el Barrio Tomás de Castro en el municipio de Caguas. Conforme surge del expediente, la aludida propiedad consta inscrita con la siguiente descripción:

> --URBANA: Barrio Tom[á]s de Castro de Caguas. Solar B. Cabida: veintiséis mil doscientos treinta y nueve punto ochocientos cincuenta y nueve (26,239.859) metros cuadrados. Linderos: NORTE, con futura Avenida Periferal Este y parcela "D" del plano de inscripción; SUR, con Finca Manrique, futura Avenida Periferal Este y Parcela "C" del plano de inscripción; ESTE, con la finca principal y la Parcela "D" del plano de inscripción; y, por el OESTE, con futura Avenida Periferal Este del plano de inscripción. Equivalencia de cabida en cuerdas: 6.67.[2]

De otra parte, la Apelante-Peticionaria adujo que MG era la dueña de la propiedad que se describe a continuación:

---

[1] Véase, SUMAC TPI, Entrada Núm. 1
[2] Véase, SUMAC TPI, Entrada Núm. 1, pág. 2

--RÚSTICA: Parcela de terreno de forma irregular identificada en el Plano de Inscripción como "La Hacienda Fase-Uno", localizada en el Barrio Tom[á]s de Castro de Caguas, Puerto Rico, con una cabida aproximada de noventa y cinco mil ciento veinticinco punto siete mil novecientos veinticinco punto siete mil novecientos veinticinco (92,125.7925) metros cuadrados equivalentes a veinticuatro punto dos cero dos seis (24.2026) cuerdas y en lindes por el NORTE, en varias distancias que suman quinientos setenta y siete punto ochenta y un (577.81) metros, con Finca Manrique, Parcela Segregada B, Acceso Existente a la Carretera Estatal setecientos ochenta y ocho (788) y Parcela Segregada A; por el SUR, en varias distancias y alineaciones que suman quinientos cincuenta y dos punto trece (522.13) metros, con terrenos de Carmen Colón y Sucesión Manrique; por el ESTE, en varias distancias y alineaciones que suman seiscientos ochenta y seis punto setenta y tres (686.73) metros, con Hacienda Borinquen y el remanente de la finca de la cual se segrega identificada en el Plano de Inscripción como la Hacienda Fase-Dos; y por el OESTE, en dos distancias que suman cientos cincuenta y tres punto noventa y cinco (153.95) metros, con Carretera Estatal setecientos ochenta y ocho (788).[3]

Como corolario de lo anterior, DAVI sostuvo que, en la propiedad antes descrita, CCAM se encontraba desarrollando un proyecto conocido como Haciendas Village, el cual cuenta con noventa y un (91) viviendas. Señaló que, conforme surgía de la descripción registral, la finca de MG contaba con acceso a la carretera PR-788. No empece a ello, DAVI esbozó que, a fin de proveerle un mejor acceso a dicha carretera, acordó concederle a MG y a CCAM un derecho de paso a través de la Parcela B.

A esos fines, DAVI argumentó que, el 25 de febrero de 2019, por virtud de la Escritura Núm. 2, intitulada *Deed of Right of Way Easement* otorgada ante la notario Laura C. Malavé Seda, se constituyó una servidumbre de paso a favor de la propiedad de MG, como predio dominante, y la Parcela B perteneciente a DAVI, como predio sirviente. En esa dirección, indicó que el derecho de paso fue descrito de la siguiente manera:

--Right of Way: Parcel of land of irregular form identified in the map of measurement as "Access easement road". Located in the Tomás de Castro neighborhood of Caguas, Puerto Rico, with an approximate capacity of seven hundred and eighty-three point six hundred and

---

[3] Véase, SUMAC TPI, Entrada Núm. 1, págs. 2-3.

seventy-six (783,676) square meters equivalent to zero point one thousand nine hundred and ninety-four (0.1994) strings. In boundaries: by the NORTH, in several distances and alignments with segregated parcel B; by the SOUTH, in several distances and alignments with segregated Parcel "B"; by the EAST, with state highway seven hundred and eightyeight (788); and on the WEST, with segregated Parcel "D.[4]

A tono con lo antes expuesto, DAVI esbozó que la servidumbre de paso se constituyó sujeta a ciertos términos y condiciones. A su vez, alegó que posteriormente, MG le traspasó el predio dominante a Haciendas Village, por lo que los aludidos términos y condiciones "se hicieron extensibles a cualquier sucesor con interés".[5] De igual forma, DAVI indicó que se acordó que la servidumbre sería revocada automáticamente en caso de que MG, CCAM o Haciendas Village, no iniciaran la construcción del proyecto Haciendas Village dentro de los tres (3) años de firmada la escritura. Abundó que, en cuanto a los gastos, los Apelados-Recurridos, se comprometieron solidariamente a hacerse responsables de los costos de reparación, limpieza y mantenimiento de la servidumbre de paso. Arguyó que éstos se obligaron a obtener todos los permisos necesarios y pagar los impuestos correspondientes. En tono similar, especificó que durante el término que durara la servidumbre, los Apelados-Recurridos, debían mantener una póliza de seguro a favor de DAVI como asegurado por una cantidad no menor de un millón de dólares ($1,000,000.00) de cubierta.

Ante este cuadro, DAVI puntualizó que la servidumbre de paso se valoró en cien mil dólares ($100,000.00). Agregó que, para evidenciar dicha obligación, MG y CCAM suscribieron un pagaré el mismo día que se firmó la Escritura Núm. 2, a saber, el 25 de febrero de 2019. Aludió a que, pese a las gestiones realizadas al momento de presentar la demanda, los Apelados-Recurridos, continúan utilizando la servidumbre sin haber hecho el pago correspondiente, haber obtenido el seguro acordado, ni haber cumplido con las otras

---

[4] Véase, SUMAC TPI, Entrada Núm.1, pág. 3.
[5] Véase, SUMAC TPI, Entrada Núm.1, pág. 4.

obligaciones pactadas. Argumentó que MG y CCAM continúan utilizando una porción de la Parcela B que no fue concedida en servidumbre, sin compensar de forma alguna a la Apelante-Peticionaria. Además, indicó que MG y CCAM no han hecho gestión para conectarse a la carretera PR-788.

Ante el alegado incumplimiento de las obligaciones de MG, CCAM y Haciendas Village, DAVI solicitó "la resolución de la servidumbre de paso constituida sobre la Parcela B a favor del predio dominante".[6] Además, solicitó un interdicto permanente para que los Apelados-Recurridos estuvieran impedidos de utilizar la Parcela B.

Posteriormente, el 17 de febrero de 2021, DAVI presentó *Demanda Enmendada*.[7] En concreto, hizo la siguiente alegación: "MG y CCAM encomendaron un plano de agrimensura detallado con rumbos y distancias circunscribiendo la servidumbre de paso para que se concediera la servidumbre conforme al mismo".[8]

Así las cosas, el 28 de abril de 2021, Haciendas Village presentó *Moción en Solicitud de Sentencia Sumaria*.[9] Por virtud de este escrito, expuso que el único acceso que tenía el complejo residencial a alguna carretera estatal o municipal era a través de la servidumbre constituida sobre la finca de DAVI. Sostuvo que revocar tal servidumbre tendría el efecto de enclavar la propiedad de Haciendas Village y, en consecuencia, a todos sus residentes. Por tanto, solicitó la desestimación de las alegaciones que pesaban en su contra aunque también requirió que se le permitiera permanecer como parte indispensable en el pleito, para así poder defender los derechos concedidos por concepto de la servidumbre.

Asimismo, el 25 de mayo de 2021, CCAM presentó *Contestación a Demanda y Reconvenci[ó]n*.[10] Mediante esta, negó algunas alegaciones, levantó sus correspondientes defensas afirmativas y, de

---

[6] Véase, SUMAC TPI, Entrada Núm.1, pág. 6.
[7] Véase, SUMAC TPI, Entrada Núm. 6
[8] Véase, SUMAC TPI, Entrada Núm. 6, pág. 3.
[9] Véase, SUMAC TPI, Entrada Núm.16.
[10] Véase, SUMAC TPI, Entrada Núm. 23.

igual forma, presentó reconvención contra DAVI. Esgrimió que DAVI incumplió con sus obligaciones tanto contractuales como extracontractuales, lo cual generó serias consecuencias para todas las partes involucradas. A esos efectos, CCAM puntualizó que, producto de ello, DAVI adeudaba una suma no menor de noventa y ocho mil trecientos sesenta y cuatro dólares ($98,364.00) de principal y cuarenta y siete mil cuatrocientos cinco dólares ($47,405.00) por intereses acumulados. Agregó que "las acciones y omisiones de [DAVI] han generado que el acceso a la PR 188 [sic] no se haya podido construir producto de lo cual los vecinos del proyecto la Hacienda Village se han visto obligados a continuar el uso del acceso establecido inicial antes mencionado".[11] En vista de lo anterior, esbozó que los daños generados por las acciones y omisiones de DAVI se estiman en una suma no menor de un millón de dólares ($1,000,000.00).

Por otro lado, CCAM agregó que el aprovechamiento ilícito por parte de DAVI al intentar beneficiarse y no cumplir con lo pactado ha generado daños y perjuicios estimados en una suma no menor de quinientos mil dólares ($500,000.00).

De igual manera, el 25 de mayo de 2021, MG presentó *Contestación a la Demanda Enmendada*.[12] Por virtud de este escrito, negó algunas alegaciones contenidas en la *Demanda Enmendada* y levantó las correspondientes defensas afirmativas. Conjuntamente, MG instó una reconvención mediante la cual solicitó una indemnización global de diez millones de dólares ($10,000,000.00) por varios incumplimientos ocasionados por DAVI. Por su parte, el 1 de junio de 2021, DAVI presentó *Oposición a Moción en Solicitud de Sentencia Sumaria*.[13] Al amparo de este escrito, sostuvo que no procedía dictar sentencia sumaria a favor de Haciendas Village por dos razones: "[p]rimero, Haciendas Village se encontraba obligada por

---

[11] Véase, SUMAC TPI, Entrada Núm. 23, pág. 5.
[12] Véase, SUMAC TPI, Entrada Núm. 24.
[13] Véase, SUMAC TPI, Entrada Núm. 25

los términos y condiciones sobre el uso de la servidumbre suscritos en el *Deed of Right of Way Easement*. Segundo, la servidumbre a través de la finca de DAVI no es el único acceso que tiene Haciendas Village hacia la carretera PR-788".[14]

De igual manera, el 4 de junio de 2021, DAVI presentó *Contestación a la Reconvención de MG General Contractors, Inc.*[15] Por virtud de esta, negó algunas alegaciones y afirmó que no se comprometió a pagar o reembolsar porción alguna de la construcción de la servidumbre de paso. Adujo que, CCAM y MG acordaron en el *Deed of Right of Way Easement,* que la servidumbre de paso sería construida y costeada por éstos en su totalidad.

Según se desprende de los autos, el 5 de agosto de 2021, CCAM instó *Solicitud de Sentencia Sumaria.*[16] Al amparo de este escrito, alegó que la servidumbre constituida generó obligaciones y responsabilidades para las partes participantes en el pacto. Indicó que DAVI se benefició del acceso a costa de los Apelados-Recurridos. Detalló que la servidumbre se encuentra en buen estado, cuenta con el seguro pactado y, de igual forma, explicó que no existe otro acceso disponible. Esbozó que las unidades fueron construidas bajo el programa federal *Low Income Housing Tax Credit* ("LIHTC") y los residentes del proyecto Haciendas Village utilizan el acceso provisto por la servidumbre de paso. Puntualizó que ni los residentes de Haciendas Village, el Municipio de Caguas, la Autoridad de Carreteras y Transportación ni el Departamento de Transportación y Obras Públicas forman parte del pleito. Cónsono con lo anterior, razonó que cancelar el acceso perjudicaría directamente a estas entidades. Ante este escenario, señaló que, no se acumularon partes indispensables. Por estos fundamentos, solicitó la desestimación de la demanda toda vez que: "(i) los hechos son claros e incontrovertidos: y (ii) deja de exponer una reclamación que justifique la concesión de un

---

[14] Véase, SUMAC TPI, Entrada Núm. 25, pág. 8.
[15] Véase, SUMAC TPI, Entrada Núm. 27.
[16] Véase, SUMAC TPI, Entrada Núm. 42.

remedio".[17] Como corolario de lo anterior, el 11 de agosto de 2021, MG radicó *Moción en Apoyo a Solicitud de Sentencia Sumaria*, mediante la cual expresó su deseo de unirse a lo expresado por CCAM en su solicitud de sentencia sumaria.[18]

En respuesta, el 7 de septiembre de 2021, DAVI presentó *Oposición a Solicitud de Sentencia Sumaria* presentada por CCAM.[19] En esencia, argumentó que tenía derecho a solicitar la resolución de la escritura de servidumbre en controversia ante el incumplimiento de CCAM y MG con los acuerdos para la constitución de la servidumbre, concretamente, en lo referente a la póliza de seguro y al pago de cien mil dórales ($100,000.00).

Tras evaluar los escritos ante su consideración, el 16 de marzo de 2022, el foro primario emitió y notificó *Resolución.*[20] Mediante esta, el foro *a quo* formuló las siguientes determinaciones de hechos incontrovertidos:

1. El demandante DAVI Development Corporation es una corporación organizada y existente al amparo de las leyes del Estado Libre Asociado de Puerto Rico.

2. El codemandado Haciendas Village, LLC es una compañía de responsabilidad limitada organizada y existente al amparo de las leyes del Estado de Delaware, EEUU y autorizada a hacer negocios en Puerto Rico.

3. Haciendas Village LLC, es la titular de una finca de 20.3636 cuerdas la cual adquirió el pasado 16 de abril de 2019 por compraventa a MG General Contractors, Inc. mediante la escritura número Uno del 2019 ante la Notaria Mayra García Solá. Esta compraventa se encuentra pendiente de inscripción en el asiento 2019-041430-CA01 del Registro de la Propiedad, Sección Primera de Caguas.

4. En la finca descrita en el párrafo anterior, se desarrolló un proyecto de 91 unidades de vivienda con renta subsidiada ubicada en el barrio Tomás de Castro I, en Caguas, Puerto Rico (el "Proyecto").

5. Haciendas Village, LLC es la beneficiaria de cierta servidumbre en una propiedad de DAVI Development Corporation (la "Servidumbre").

6. El 25 de febrero de 2019 se otorgó una escritura de constitución de servidumbre ante la Notario Público, Laura C. Malavé Seda.

---

[17] Véase, SUMAC TPI, Entrada Núm. 42, pág. 10.
[18] Véase, SUMAC TPI, Entrada Núm. 45.
[19] Véase, SUMAC TPI, Entrada Núm. 57.
[20] Véase, SUMAC TPI, Entrada Núm. 87.

7. Los comparecientes a dicho instrumento público fueron DAVI Development Corporation, CCAM y MG General Contractors, Inc. El Sr. Miguel Ramos Lozada compareció en representación de MG General y CCAM.

8. La escritura de servidumbre contiene los acuerdos recíprocos adoptados por las partes.

9. Las condiciones fueron establecidas en varios párrafos. En la página 7 de la escritura se establecieron las siguientes:

    (i) No será utilizada para propósitos que no estén expresamente autorizados (texto en inglés en la escritura 'it cannot be used for other purposes which are not expressly authorized herein");

    (ii) (No negociable, no transferible y no será grabado de ninguna forma excepto que tal gravamen transcurrirá con la titularidad del predio dominante (sujeto a los términos de la escritura) con la condición de que el proyecto de Haciendas Village fuese construido durante en un periodo de tres años (texto en inglés en la escritura "it is non-negotiable, nontransferable and cannot be encumbered in any way, except that such easement shall run with the ownership of the DOMINANT PROPERTY (subject to the terms herein) as long as Haciendas Village Project is constructed within three (3) years of the execution of this easement";

    (iii) Que si por alguna razón el proyecto de renta (alquiler) de Haciendas Village no comienza construcción en un periodo de 3 años o fuese modificado a propiedad horizontal, la servidumbre constituida quedaría inmediatamente revocada ("if by any reason the Hacienda Village development does not begin construction of the ninety-one (91) units for rent within three (3) year of the execution of this easement, or is modified to a horizontal property Project, the easement constituted in this act will be automatically revoked as if the same was not granted"; y

    (iv) La servidumbre continuaría en existencia hasta que la autopista estatal PR 788 fuese conectada con la Parcela D que fuera destinada a uso público. Ello, conforme a los términos y condiciones de otra escritura allí descrita (texto en inglés en la escritura "it will remain in existence until the State Highway PR seven hundred and eighty-eigh (PR-788) is connected to Parcel D, which in its day will be destined to public use, pursuant to Deed number twenty (20) of Segregation, Liberation and Transfer executed on the twelfth (12th) day of September of two thousand six (2006) before Notary Mayra García Solá, and at that time the easement created in this act will extinguish".

10. Adicional a esas condiciones, las partes pactaron las siguientes contraprestaciones en contrato elevado a escritura pública (Véase SUMAC entrada 16 anejo 2):

- Página 10 de la escritura de servidumbre – MG y CCAM serían solidariamente responsables por el cumplimiento de las siguientes obligaciones contraídas en la escritura;

- Página 10 de la escritura de servidumbre - Coordinación y costos de cualquier carretera existente o que se construya;

- Página 10 de la escritura de servidumbre - Absorber los costos y acciones necesarias para la obtención de los permisos que le fuesen requeridos;

- Página 10 de la escritura de servidumbre - Coordinación de reparación, limpieza y mantenimiento de la carretera y servidumbre en su totalidad;

- Página 10 de la escritura de servidumbre - Las contribuciones sobre la propiedad inmueble ó contribuciones especiales que genere ello si alguna sobre las mejoras que fuesen construidas como parte del acceso;

- Página 10 de la escritura de servidumbre - Durante la vigencia de la servidumbre contar con una póliza de seguro de una empresa con reputación y capacidad financiera por $1,000,000 con ciertas condiciones allí establecidas; y

- Página 10 de la escritura de servidumbre - Proveer evidencia del cumplimiento de las obligaciones antes mencionadas. No suficiente con ello, las partes también pactaron en la cláusula séptima, pagina 11 de la escritura que se establecía el costo de la servidumbre por el monto de $100,000 única y exclusivamente para efectos de inscripción en el Registro de la Propiedad.[21]

De la misma forma, el foro primario resolvió que los siguientes asuntos se encontraban en controversia:

1. Si además de los acuerdos y obligaciones establecidos en la escritura las partes pactaron otros acuerdos y obligaciones adicionales.

2. El presunto pago del pagaré por la cantidad de $100,000.00

3. Accesos adicionales, si alguno, que tuviera la parte demandada Haciendas Village, LLC. a la carreta PR-788 y a su vez determinar si Haciendas Village es una finca enclavada.

4. Determinación de si procede o no la revocación de la servidumbre.

---

[21] Véase, SUMAC TPI, Entrada Núm. 87, págs. 6-9.

5. Determinación de si hay o no falta de partes indispensables en el pleito.[22]

A tono con lo anterior, el foro primario razonó que conforme surgía de los documentos:

> [E]xisten múltiples alegaciones sobre obligaciones y responsabilidades recíprocas de las partes. Desconocemos cuáles fueron, en efecto, la totalidad de las obligaciones entre las partes adicional a lo pactado en la escritura. La parte demandante reclama el pago del pagaré por la cantidad de $100,000.00 y que procede la revocación de la servidumbre. Este Tribunal entiende que en este momento y con los argumentos de las partes no se puede disponer del caso por la vía sumaria.

> Conforme nuestro ordenamiento jurídico procede dictar sentencia sumaria cuando el Tribunal entiende que tiene ante sí la verdad de todos los hechos del caso y que solo resta la aplicación del derecho. Entendemos que eso no sucede en este caso y que procede culminar el descubrimiento de prueba, que las partes presenten todo documento relacionado a sus alegaciones para que el Tribunal pueda evaluar y disponer del caso según corresponda. [23]

En sintonía con el análisis que precede, el foro *a quo* declaró *No Ha Lugar* las solicitudes de sentencia sumaria presentadas por Haciendas Village, MG y CCAM.

Subsiguientemente, el 31 de marzo de 2022, DAVI presentó *Solicitud de Reconsideración*.[24] Por virtud de este escrito, solicitó que se incluyera algunos hechos incontrovertidos en la *Resolución* dictada.

Mientras tanto, el 4 de mayo de 2022, Haciendas Village presentó *Contestación a Demanda Enmendada*, mediante la cual negó algunas alegaciones y levantó ciertas defensas afirmativas.[25] De otro lado, el 6 de mayo de 2022, los Apelados-Recurridos presentaron, por separado, sus respectivos escritos en oposición a la solicitud de reconsideración instada por DAVI.[26]

Examinados estos alegatos, el 16 de mayo de 2022, notificado al día siguiente, el foro primario emitió *Orden* en la que dispuso lo

---

[22] Véase, SUMAC TPI, Entrada Núm. 87, pág. 9.
[23] Véase, SUMAC TPI, Entrada Núm. 87, págs. 16-17.
[24] Véase, SUMAC TPI, Entrada Núm. 89.
[25] Véase, SUMAC TPI, Entrada Núm. 99.
[26] Véase, SUMAC TPI, Entradas Núm. 100-102.

siguiente: "No [H]a Lugar la Reconsideración de la parte demandante".[27]

Transcurridos varios trámites procesales los cuales son innecesarios pormenorizar, el 5 de octubre de 2023, CCAM instó *Solicitud de Sentencia Sumaria Parcial.*[28] En esta argumentó que, en lo referente a la reconvención radicada por esta parte, le corresponde a DAVI emitir "el pago por concepto de aportaciones para la construcción de las infraestructuras existentes".[29] Además, solicitó la desestimación de la demanda enmendada incoada por DAVI, la celebración de una vista para dilucidar la cantidad que DAVI debía pagar y la imposición a la Apelante-Peticionaria de costas y honorarios de abogado por temeridad.

En la misma dirección, el 17 de noviembre de 2023, Haciendas Village radicó *Moción en Solicitud de Sentencia Sumaria.*[30] En esta, alegó que DAVI tenía conocimiento de dos hechos esenciales que hacían del presente pleito uno frívolo: "(i) en virtud del contrato suscrito por la Demandante en el 2006 Haciendas Village tiene derecho a utilizar el Camino Existente sobre el cual se constituyó la Servidumbre, así como (ii) el camino sobre el que se constituyó la Servidumbre es el único acceso que tienen Haciendas Village y sus 91 residentes para acceder una carretera estatal o municipal".[31] Cónsono con esto, solicitó que el foro primario le impusiera a DAVI honorarios de abogado por una cantidad no menor de cincuenta mil dólares ($50,000.00) por temeridad.

En sintonía con lo anterior, el 30 de noviembre de 2023, MG presentó *Moción en Solicitud de Sentencia Sumaria.*[32] Mediante este escrito, argumentó que en el presente caso faltaban partes indispensables, lo que impedía la concesión de un remedio completo y

---

[27] Véase, SUMAC TPI, Entrada Núm. 104.
[28] Véase, SUMAC TPI, Entrada Núm. 181.
[29] Véase, SUMAC TPI, Entrada Núm. 181, pág. 31.
[30] Véase, SUMAC TPI, Entrada Núm. 191.
[31] Véase, SUMAC TPI, Entrada Núm. 191, pág. 28.
[32] Véase, SUMAC TPI, Entrada Núm. 193.

adecuado. Además, esbozó que la servidumbre suscrita mediante la escritura pública otorgada el 25 de febrero de 2019, no puede ser revocada conforme la petición incoada por la parte Apelante-Peticionaria, pues existen inmuebles que quedarían enclavados si no se permite el uso de esta.

En igual fecha, el 30 de noviembre de 2023, DAVI presentó *Solicitud de Sentencia Sumaria Parcial para la Rescisión de la Servidumbre.*[33] En síntesis, argumentó que los Apelados-Recurridos han incumplido con varias obligaciones pactadas en la Escritura Núm. 2, tales como la obtención de un seguro de un millón de dólares ($1,000,000.00) el cual debía incluir una cubierta de *general liability*, *property* y cubrir cualquier daño realizado por los desarrolladores. Alegó, además, que la póliza expedida por los Apelados Recurridos fue una de *builder's risk*. Asimismo, DAVI expuso que CCAM y MG se obligaron a pagarle solidariamente, mediante pagaré, la cantidad de cien mil dólares ($100,000.00) más los intereses, sin embargo dicho pago no se había efectuado. En igual fecha, DAVI presentó *Solicitud de Sentencia Sumaria contra Reconvención de MG General.*[34] En concreto, alegó que no existía un acuerdo entre DAVI y MG para el desarrollo de las facilidades en "el área" y, además, expuso que MG no era la dueña actual del predio dominante, por lo que no podía reclamar el costo de construcción de una servidumbre. En tal sentido, DAVI adujo que Haciendas Village, quien es la dueña del predio dominante, tenía otra servidumbre de paso a su favor la cual le proveía acceso a la carretera PR-788.

Al día siguiente, el 1 de diciembre de 2023, DAVI presentó *Oposición a Solicitud de Sentencia Sumaria Parcial de CCAM y Solicitud de Sentencia Sumaria a Favor de DAVI Desestimando la Reconvención de CCAM.*[35] En síntesis, sostuvo que los daños alegados por CCAM eran especulativos. En respuesta, el 21 de diciembre de

---

[33] Véase, SUMAC TPI, Entrada Núm. 194.
[34] Véase, SUMAC TPI, Entrada Núm. 195.
[35] Véase, SUMAC TPI, Entrada Núm. 196.

2023, CCAM presentó *Oposicion* [sic] *a Solicitud de Sentencia Sumaria Parcial de DAVI y Reiteracion* [sic] *de Solicitud Sumaria Parcial a Favor de CCAM.*[36] Por su parte, Haciendas Village instó *Moción en Oposición de Solicitud de Sentencia Sumaria Parcial del Demandante,*[37] mientras que, al siguiente día, el 22 de diciembre de 2023, MG instó *Moción en Oposicion* [sic] *a Solicitud de Sentencia Sumaria Contra la Reconvencion* [sic] *de MG General Contractors, Inc.*[38]

Así las cosas, el 29 de diciembre de 2023, DAVI presentó *Oposición a Moción de Sentencia Sumaria de Hacienda[s] Village (SUMAC # 191) y,*[39] al mismo tiempo, presentó *Oposición a Moción de Sentencia Sumaria de MG General (SUMAC # 193).*[40] Subsiguientemente, el 16 de enero de 2024, MG presentó *Oposicion [sic] a Solicitud de Sentencia Sumaria Parcial para la Rescision [sic] de la Servidumbre.*[41]

Transcurridos varios trámites procesales, el 25 de junio de 2025, el foro primario emitió y notificó *Sentencia.*[42] Por virtud de esta, acogió las determinaciones de hechos esbozadas en la *Resolución* dictada el 16 de marzo de 2022, e incorporó las siguientes determinaciones de hechos:

### B. Determinaciones de Hechos Adicionales

1. SIX Development, SE (SIX) es una sociedad especial organizada y existente al amparo de las leyes del Estado Libre Asociado de Puerto Rico.

2. Uno de los socios de SIX es el Sr. Carlos García Muñiz.

3. CMD Developers, Corp. (CMD) es una corporación organizada y existente al amparo de las leyes del Estado Libre Asociado de Puerto Rico cuyo representante autorizado es el Ing. David Pérez Arritola.

4. El Sr. García y el Sr. David Pérez Arritola mantuvieron relaciones comerciales por un extenso periodo de tiempo.

5. El 29 de abril de 2003 SIX, entidad relacionada a García, obtuvo la aprobación de una Consulta de Ubicación de una finca ubicada en el Barrio Tomás de Castro de Caguas, Puerto Rico. Esta Consulta de

---

[36] Véase, SUMAC TPI, Entrada Núm. 202.
[37] Véase, SUMAC TPI, Entrada Núm. 204.
[38] Véase, SUMAC TPI, Entrada Núm. 205.
[39] Véase, SUMAC TPI, Entrada Núm. 209.
[40] Véase, SUMAC TPI, Entrada Núm. 212.
[41] Véase, SUMAC TPI, Entrada Núm. 216.
[42] Véase, SUMAC TPI, Entrada Núm. 255.

Ubicación, Número 1999-46-0970-JPU, autorizó la construcción de cuatro proyectos de vivienda en la finca de SIX (en adelante la "Consulta de Ubicación"). Dos de los proyectos eran de casas (89 y 91 residencias respectivamente) y los otros dos proyectos de vivienda eran de apartamentos tipo walk-up (106 y 118 unidades respectivamente).

6. En la Consulta de Ubicación se identificó tanto las parcelas donde se desarrollarían los proyectos de vivienda tipo walk-up como las parcelas donde se desarrollarían las casas.

7. El 16 de septiembre de 2003 SIX, representado por García y CMD, representado por Víctor David Pérez Torres, suscribieron un Contrato de Opción donde CMD como Optante adquirió el derecho de adquirir las dos parcelas de SIX de proyectos tipo walkup aprobadas en la Consulta.

8. El Sr. David Pérez Arritola, representante autorizado de la parte demandante, escogió al Lcdo. Edwin Rosas Noya para que redactase el Contrato de Opción.

9. El Contrato de Opción estableció múltiples aspectos, entre estos:

   (i) el desarrollo autorizado estaría dividido por una avenida que atravesaría los cuatro proyectos y que ambas partes reconocieron como "indispensable" y dedicarían a uso público las áreas necesarias para ello; y

   (ii) CMD adquiría los dos subproyectos de vivienda tipo walk-ups.

10. El Contrato de Opción identificó las parcelas opcionadas por CMD como: Finca A donde se desarrollaría un proyecto conocido como Laderas del Río de 106 unidades y la Finca B donde se desarrollaría un proyecto conocido como Ladeas [sic] del Río Fase II de 118 unidades.

11. El 14 de septiembre de 2006 mediante la Escritura Número 49 la demandante el demandante DAVI representado por Víctor David Pérez Torres, adquiere la Finca B previamente opcionada por CMD de SIX representada por García (en adelante la Escritura de Compraventa).

12. El Notario de la escritura de compraventa fue el Lcdo. Edwin Rosas Noya seleccionado por David Pérez Arritola.

13. La Escritura de Compraventa en la sección de Cláusulas y Condiciones, el número E (iii) dispone en parte pertinente:

   "que la Parcela, según conocimiento de LA PARTE VENDEDORA, no está afecta a condición alguna que pueda impedir o interferir con el desarrollo de dicha Parcela, y que ninguna parte de esta Parcela se encuentra pendiente de algún proceso de expropiación u otro similar, ya sea administrativa, extrajudicial o judicialmente, o está reservada para uso público, excepto por una posible expropiación y/o requerimiento de dedicación de uso, de una porción de terreno de aproximadamente trescientos cuatro (304) metros de largo por veinticinco (25) metros de ancho, a

lo largo de la colindancia Oeste con la Carretera Estatal Número Setecientos Ochenta y Ocho (788)";

14. El mismo día de otorgar la Escritura de Compraventa, SIX representado por García y DAVI representado por Víctor David Pérez Torres, entre otros comparecientes suscribieron un documento titulado Acuerdo Complementario.

15. El Acuerdo Complementario fue redactado y juramentado por el mismo Notario que preparó el Contrato de Opción y la Escritura de Compraventa, es decir, por el Lcdo. Edwin Rosas Noya escogido por el Sr. David Pérez Arritola.

16. El Acuerdo Complementario estableció entre otros aspectos lo siguiente:

a) La comparecencia incluyó a Pérez y García en su carácter personal entre otros comparecientes;

b) La cesión de un espacio sin costo para la construcción de un acceso;

c) La proporción de distribución de costos para el acceso y las demás obras de infraestructura a razón de 46% para García y sus entidades afiliadas y 54% para David Pérez y sus entidades afiliadas;

d) DAVI como comprador aceptó haber recibido, entre otros documentos, todos los estudios, endosos, permisos de su finca. En la sección 7 (página 4) del Contrato Complementario reza en parte pertinente que:

"Con la firma de este contrato, LA VENDEDORA manifiesta y representa que le ha cedido, transferido y entregado a LA COMPRADORA a través del otorgamiento adicional de un documento titulado "Bill of Sale", y por el precio y demás consideraciones allí indicadas, sin costo adicional alguno, todos los documentos y la información que tiene a su disposición relacionada con la Finca B y el Proyecto de "walk ups" aprobado allí, así como todos sus derechos e intereses sobre dicho Proyecto y toda la documentación relacionada, incluyendo planos topográficos, de mensura, estudios, la consulta de ubicación y todas sus extensiones y prórrogas, cartas de aprobación, endosos de las agencias gubernamentales concernidas, los planos aprobados por la Junta de Planificación, todos los Permisos relacionados, y todas las acciones e intereses que tiene LA VENDEDORA en el Caguas Consortium, Inc. y que corresponden al Proyecto de "walk-ups" aquí relacionado. Todos estos derechos, intereses, documentos e información son colectivamente denominados, para los efectos de este contrato, como "la Documentación". LA VENDEDORA le representa a LA COMPRADORA que tiene pleno poder y autoridad para así cederle y transferirle la Documentación.".

e) Pérez y García acordaron en el inciso 5, página 3 del acuerdo que se dedicaría y cedería a uso público (el nuevo acceso) libre de costo.

f) El Contrato Complementario, además, en parte pertinente dispone que:

"Las partes acuerdan que todos los costos, gastos y aportaciones que se relacionan aquí, y que corresponden a la VENDEDORA o a la COMPRADORA, ya sea en su totalidad o proporcionalmente, serán pagados y satisfechos por la parte obligada tan pronto como sea necesario o vencedero cada pago o aportación, e independientemente de que la VENDEDORA o la COMPRADORA, en algún momento, decida no continuar con el desarrollo o la construcción de su proyecto particular o cualquier parte del mismo, y las partes reconocen y convienen que estos ha[n] sido material y condición esencial para que las partes entren en este contrato y otorguen la referida escritura de compraventa entre la COMPRADORA y GARCIA."

g) El Acuerdo Complementario también indica en el inciso 7 página 4 que García le transfirió a Pérez los demás documentos relacionados, todos los derechos e intereses exclusivos sobre permisos, endosos, aprobaciones, planos y documentos y demás documentos sobre el proyecto adquirido.

17. Tanto la Escritura de Compraventa como el Acuerdo Complementario indican que la propiedad de DAVI estaba sujeta a posible expropiación o dedicación a uso público en función de los accesos que fueran finalmente aprobados por las agencias gubernamentales.[43]

19. La entidad relacionada a García, SIX, construyó el primero de los proyectos aprobados (Las Haciendas).

20. Como parte de este desarrollo SIX construyó no solo la infraestructura de su proyecto sino gran parte de la infraestructura común relacionada con los cuatro proyectos aprobados bajo la Consulta de Ubicación.

21. Entre la infraestructura común construida que es común a todos los proyectos aprobados bajo la Consulta de Ubicación se incluye el camino de acceso de estos proyectos a la PR-788.

22. Mediante comunicación del 11 de octubre de 2007 la Autoridad de Carreteras endosó el acceso actual. Véase Exhibit 7 de la Solicitud de Sentencia Sumaria de HV (SUMAC #191).

23. David Pérez Arritola admitió haber estado presente y visitado la finca de DAVI en múltiples ocasiones durante la construcción de las obras de infraestructura existente que incluyeron el camino donde se constituyó la Servidumbre.

24. El acceso donde se constituyó la Servidumbre fue construido y está en uso mucho antes del desarrollo y construcción del proyecto Haciendas Village.

25. Tanto el Contrato de Opción como el Acuerdo Complementario establecen que David Pérez Arritola y sus entidades (DAVI y CMD) serían responsables del pago del 54% de los gastos de la infraestructura común a los cuatro proyectos aprobados en la Consulta de Ubicación.

---

[43] Conforme surge de la *Sentencia*, luego de la determinación de hecho número 17, se salta a la determinación de hechos número 19.

26. En específico, a la finca que adquirió DAVI la responsabilidad por la proporción que le compete sería el pago de 30%; y la otra entidad, CMD sería el responsable del pago de 24%. Ello representa el total de pago atribuible a las propiedades adquiridas por entidades relacionados a Pérez Arritola y a las entidades que permanecieron bajo García le corresponde una aportación de 46% del costo de la construcción de las infraestructuras.

27. El Acuerdo Complementario también estableció que ya fuese las entidades de David Pérez Arritola o las de García el primero que estuviera listo, podría comenzar a construir y el otro reembolsaría la parte que le correspondiese.

28. Mediante enmienda a la Resolución de la Consulta de Ubicación, las empresas de David Pérez Arritola solicitaron y obtuvieron un aumento de densidad para sus proyectos Laderas I y Laderas II (finca DAVI) a cambio de construir y pagar la conexión entre la PR-788 y los proyectos aprobados bajo la Consulta de Ubicación.

29. Pérez obtuvo la aprobación del aumento en densidad.

30. David Pérez Arritola y sus empresas negociaron con la Autoridad de Carreteras y el Municipio de Caguas la construcción de la conexión de la PR-788 con los proyectos aprobados bajo la Consulta de Ubicación, incluyendo el acceso a la propiedad de DAVI.

31. Ni David Pérez Arritola, ni el proyecto Laderas I (CMD) ni el proyecto Laderas II (DAVI) construyeron la conexión entre la PR-788 y los proyectos aprobados bajo la Consulta de Ubicación.

32. David Pérez Arritola y sus empresas propusieron al Municipio de Caguas que tanto Laderas I (CMD) y Laderas II (DAVI) accedieran a la PR788 a través del acceso existente construido por SIX y donde se constituyó la Servidumbre en la finca de DAVI.

33. David Pérez Arritola informó al Municipio de Caguas que sus empresas, en conjunto con Las Haciendas (SIX) habían construido el camino existente donde se constituyó la Servidumbre.

34. La empresa de García (SIX) le ofreció a David Pérez Arritola y sus empresas la opción de estos contratar la instalación de la tubería sanitaria del proyecto y este rechazó esta alternativa.

35. Durante el desarrollo de Las Haciendas, SIX le envió múltiples cartas de cobro a David Pérez Arritola y sus entidades por los gastos incurridos en la construcción de la infraestructura común de los proyectos según pactado en el Acuerdo Complementario.

36. David Pérez Arritola notificó por escrito al representante de SIX que abonaría parte su deuda ya que estaba confrontando problemas económicos.

37. El codemandado CCAM es una compañía de responsabilidad limitada existente y organizada al amparo de las leyes del Estado de Libre Asociado de Puerto Rico y uno de sus miembros es García.

38. El segundo miembro de CCAM es Miguel Ramos Lozada.

39. La empresa de García y Ramos (CCAM) fue el desarrollador del proyecto Haciendas Village descrito en el Hecho número tres de la Resolución del 16 de marzo de 2022 (SUMAC #87)

40. Miguel Ramos Lozada en representación de CCAM como desarrollador y de MG como contratista general del proyecto Haciendas Village contactó a David Pérez Arritola, representante de DAVI para constituir la Servidumbre sobre el acceso construido por SIX.

41. El representante de CCAM y MG y el representante de DAVI intercambiaron comunicaciones sobre la constitución de la Servidumbre.

42. **El 11 de enero de 2019 David Pérez Arritola como representante de DAVI le notificó a Miguel Ramos Lozada como representante de CCAM y MG que la servidumbre tendría un costo de $100,000.00.**

43. Unos días más tarde, el 18 de enero de 2019, Miguel Ramos Lozada como representante de CCAM y MG rechazó la solicitud de DAVI sobre el cobro y le **respondió el correo al representante de DAVI notificando en letras rojas: "(Se incluirá lenguaje en la escritura estableciendo en $100,000 el valor de la transacción (la constitución de la servidumbre) para propósitos del Registro de la Propiedad (no genera obligación de pago)".**

44. El 25 de febrero de 2019 se otorgó la escritura de servidumbre ante la notaría Laura C. Malavé Seda. La última determinación de hechos incluida en la Resolución del 16 de marzo de 2022 indicó que: "[n]o suficiente con ello, las partes también pactaron en la cláusula séptima, página 11 de la escritura que se establecía el costo de la servidumbre por el monto de $100,000 única y exclusivamente para efectos de inscripción en el Registro de la Propiedad."

45. La escritura de Servidumbre también indica otras obligaciones y responsabilidades de las partes y que fueran señaladas en la Resolución de 16 de marzo de 2022.

46. **También el 25 de febrero de 2019 MGG y CCAM suscribieron un pagaré por la cantidad de $100,00.00 el cual establece que está relacionado con las disposiciones de la escritura de Servidumbre otorgada ese día.**

47. Según consta en el propio documento, el pagaré está sujeto a las disposiciones de la escritura de Servidumbre.

48. En virtud de las disposiciones del Contrato de Opción, de la Escritura de Compraventa, del Acuerdo Complementario, los documentos preparatorios previos a la otorgación de la Servidumbre y de la propia Escritura de Servidumbre y del propio pagaré, **no existe obligación de pago de CCAM y MG hacia DAVI.**

49. También como parte del desarrollo de Haciendas Village en el 2019, la empresa de García y de Ramos (CCAM) ordenó la realización de ciertas obras de extramuros adicionales, en específico la instalación de una tubería sanitaria requerida por la Autoridad de Acueductos y Alcantarillados.

50. David Pérez Arritola fue informado por el Ing. Miguel Ramos de la construcción de esta obra extramuros, su costo y que era necesario para desarrollar los restantes proyectos aprobados por la Consulta de Ubicación, incluyendo el proyecto de la empresa de David Pérez Arritola (DAVI) antes de que se constituyera la escritura de servidumbre, antes de que se iniciara la construcción del proyecto y antes de que se iniciara el presente caso judicial.

51. Ni David Pérez Arritola, ni DAVI u otras de las empresas de Pérez objetaron la construcción de la obra extramuros y su costo.

52. Una de las empresas de García (SIX) le cedió a otra empresa de García (CCAM) sus derechos sobre la deuda de la empresa de David Pérez Arritola (DAVI).

53. La empresa de García y Ramos (CCAM) ha realizado gestiones de cobro a la empresa de David Pérez Arritola (DAVI) por los gastos de infraestructura compartida que esta no pagó.

54. CCAM reclamó a DAVI mediante reconvención la cantidad de $98,364.00 de principal más los intereses acumulados por $47,405.00, daños y perjuicios por varios conceptos incluyendo aprovechamiento ilícito de las obras extramuros construidas y para las cuales DAVI aceptó pagar la proporción que le correspondía que no pagó.

55. Durante el desarrollo del caso de autos, CCAM actualizó la cantidad reclamada de la proporción de las aportaciones correspondientes a Pérez Arritola y sus entidades para incluir los gastos más recientes de infraestructura compartida en los proyectos aprobados en la Consulta de Ubicación y los tres contratos otorgados por P[é]rez y García.

56. Según se desprende de comunicaciones CCAM a DAVI de enero de 2023, la cantidad actualizada por CCAM a DAVI en su reconvención, incluyendo la infraestructura compartida construida al momento de desarrollar Haciendas Village, ascendía a $418,823.00.

57. La cantidad reclamada por CCAM incluye tanto lo que corresponde a DAVI como la que corresponde a la otra entidad de Pérez Arritola (CMD) conforme al contrato de opción, la escritura de compraventa y el acuerdo suplementario.

58. A tenor con los términos del Contrato de opción, el Acuerdo Complementario y la escritura de compraventa de DAVI, esta es responsable del 55.5% de esta deuda (30% de DAVI/54% total de empresas de Pérez). Siendo esto así, la deuda de DAVI a CCAM a enero de 2023 asciende a $232,447.

59. Los dos proyectos aprobados de residencias unifamiliares aprobados por la Consulta de Ubicación relacionados a las empresas de García (SIX y Haciendas Village) totalizan 180 unidades de vivienda, fueron construidos y están ocupados.

59. El camino existente a través de la finca del demandante DAVI y sobre el cual se constituyó la

Servidumbre es el único acceso que tienen los residentes de Haciendas Village y Las Haciendas a la PR-788.[44]

60. No existe otro camino, de ningún tipo, que conecte los proyectos La Hacienda y Haciendas Village con una carretera estatal o camino municipal.

61. De declararse con lugar la Demanda Enmendada la finca de Haciendas Village, las 91 familias que allí residen no podrán acceder a sus propiedades. Tampoco los residentes de la otra urbanización, La Hacienda.

62. David Pérez Arritola autorizó a una de las empresas de Ramos, (MG) a utilizar la finca de DAVI mientras MG construía el proyecto de Haciendas Village.

63. Durante la construcción de Haciendas Village y MG ocupó la finca de DAVI, MG mantuvo pólizas de seguro de responsabilidad pública y de Builder's Risk.

64. Desde 2021 CCAM y entidades relacionadas a García han mantenido una póliza de seguros de responsabilidad pública sobre la finca de DAVI.

65. Los usos pactados en la Servidumbre se han cumplido incluyendo la construcción de un proyecto de residencias unifamiliares bajo el programa federal de Low Income Housing Tax Credit.

66. El área objeto de la Servidumbre y la carretera se han mantenido conforme a lo pactado.

67. La Demanda Enmendada no incluyó a los titulares del proyecto Las Haciendas cuyo único acceso a la PR-788 es el camino sobre el cual se pretende eliminar la Servidumbre.

68. La Demanda Enmendada no incluyó a los residentes del proyecto Haciendas Village.

69. La Demanda Enmendada no incluyó a la Autoridad de Carreteras entidad que aprobó el camino existente en la finca de DAVI y sobre el cual se constituyó la Servidumbre.

70. La Demanda Enmendada no incluyó al Municipio Autónomo de Caguas entidad con la que David Pérez Arritola y DAVI negociaron un endoso ante la Junta de Planificación a cambio de la construcción de un proyecto.

71. Los servicios a los residentes de la urbanización Haciendas Village y La Hacienda que requieren acceso al lugar por agencias e instrumentalidades de gobierno incluyendo al Municipio Autónomo de Caguas, el Gobierno Central u otras instrumentalidades es a través del camino por donde discurre la servidumbre sobre la finca de DAVI.

72. A pesar de que al representante autorizado de DAVI le constaba, DAVI negó por tres años que el único acceso de Haciendas Village y Las Haciendas es el camino construido a través de su finca y sobre el que se constituyó la Servidumbre.

73. DAVI se negó a producir información requerida por CCAM y MG en el descubrimiento de prueba.

---

[44] Conforme surge de la Sentencia, hay dos (2) determinaciones de hechos número 59.

74. CCAM tuvo que obtener los documentos requeridos a DAVI mediante una Citación al Ing. Guillermo Burgos, consultor de DAVI.

75. MG tuvo que requerir una Orden del Tribunal para obtener del Municipio de Caguas documentos requeridos a DAVI.

76. De la información producida por el Ing. Burgos surge información que DAVI pudo tramitar los endosos y permisos para desarrollar su proyecto.

77. De la información producida por el Ing. Burgos y el Municipio de Caguas se desprende que Pérez Arritola y sus empresas (incluyendo a DAVI) negoció un aumento de densidad en la Consulta de Ubicación a cambio de construir el acceso a través de su finca para conectar los proyectos aprobados en la Consulta de Ubicación y la PR-788.

78. De la información producida por el Municipio de Caguas también se desprende que DAVI no solo ofreció construir el acceso de los proyectos aprobados en la Consulta de Ubicación a la PR-788, sino que también propuso utilizar el camino existente construido por SIX para dar acceso a sus proyectos a la PR-788.

Cónsono con estas determinaciones de hechos,[45] el foro primario dictaminó lo siguiente:

a. [Se] declara HA LUGAR la [s]olicitud de sentencia sumaria contra la demanda enmendada presentada por CCAM y las solicitudes de sentencia sumaria de HV y MG;

b. se desestima, con perjuicio, la demanda enmendada presentada por DAVI;

c. se declara Ha Lugar la reconvención presentada por CCAM y ordena a DAVI al pago de $232,447.00 más intereses;

d. se desestima con perjuicio la reconvención de MG ya que la desestimación con perjuicio de la demanda enmendada impide que se generen los daños alegados en su reconvención; y

e. Por su temeridad, se condena a DAVI al pago de honorarios de abogado por continuar con su demanda enmendada cuando lo resuelto por la Resolución del 16 de marzo de 2022 atisbaba que, ausente un acceso adicional, su pleito carecía de méritos; y por obligar a las partes adversas a procurar documentos que estaban en su poder o bajo su control. En específico se le condena a pagar $10,000 a CCAM quien tuvo que procurar documentos mediante Citación; $10,000 a MG quien también tuvo que procurar documentos mediante Orden Judicial; y $5,000 a HV.[46]

Oportunamente, el 2 de julio de 2025, Haciendas Village radicó

*Memorando de Costas Incurridas Previo a Notificación de Oferta de*

---

[45] Véase, SUMAC TPI, Entrada Núm. 255, págs. 16-26.
[46] Véase, SUMAC TPI, Entrada Núm. 255, pág. 55.

*Sentencia*[47] y *Moción Informativa y en Solicitud de Costas, Gastos y Honorarios de Abogado en Virtud de la Regla 35.1 de Procedimiento Civil.*[48] Mediante estas mociones, Haciendas Village, le requirió a DAVI el pago de las costas y honorarios de abogado tras emitirse la *Sentencia* emitida y notificada el 25 de junio de 2025. Especificó que, el 10 de marzo de 2022, le había extendido a DAVI una oferta de sentencia, a tenor con la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. R. 35.1, por mil dólares ($1,000.00) pero la Apelante-Peticionaria nunca contestó la referida oferta. Ante esto, Haciendas Village esgrimió que los honorarios, a partir de la oferta rechazada, ascendían a sesenta y cuatro mil cuatrocientos noventa y dos dólares con seis centavos ($64,492.06).

Cónsono con lo antes expuesto, el 3 de julio de 2025, CCAM presentó *Moción Informativa y en Solicitud de Costas, Gastos y Honorarios de Abogado en Virtud de la Regla 35.1 de Procedimiento Civil*[49] y *Memorando de Costas Incurridas.*[50] Por virtud de estos escritos, esgrimió que, el 10 de marzo de 2022, le extendió a DAVI una oferta de sentencia por tres mil dólares ($3,000.00) de la cual nunca recibió respuesta. Ante este hecho, solicitó el pago de cincuenta y cinco mil trecientos veintinueve dólares con sesenta y siete centavos ($55,329.67) a tenor con la Regla 35.1 de Procedimiento Civil, *supra.* De igual forma, solicitó el pago de cuatro mil cuarenta y cinco dólares con veintiocho centavos ($4,045.28) por concepto de costas, al amparo de la Regla 44.1 de Procedimiento Civil, *supra.*

A su vez, el 5 de julio de 2025, MG presentó *Mocion [sic] Informativa y en Solicitud del Pago de Costas e Imposición [sic] de Honorarios a Tenor con la Regla 44.1 de Procedimiento Civil*, en la que le solicitó a DAVI el pago de ciento cuatro mil seiscientos veinticinco

---

[47] Véase, SUMAC TPI, Entrada Núm. 257.
[48] Véase, SUMAC TPI, Entrada Núm. 258.
[49] Véase, SUMAC TPI, Entrada Núm. 259.
[50] Véase, SUMAC TPI, Entrada Núm. 260.

dólares ($104,625.00) por concepto de honorarios de abogado y noventa dólares ($90.00) por las costas, a tenor con la Regla 44.1 de Procedimiento Civil, *supra.*[51]

Así las cosas, inconforme con el dictamen emitido el 10 de julio de 2025, DAVI presentó *Solicitud de Reconsideración,*[52] la cual fue denegada el 14 de julio de 2025.[53] Evaluados los diversos escritos sometidos por los Apelados-Recurridos, el foro primario emitió varias resoluciones imponiendo el pago de las siguientes cuantías, al amparo con la Regla 44.1 de Procedimiento Civil, *supra*:

1. Mediante *Resolución*, emitida el 3 de julio de 2025, se le impuso a DAVI el pago de sesenta y cuatro mil cuatrocientos noventa y dos dólares con seis centavos ($64,492.06) por concepto de costas, gastos y honorarios de abogado a favor de Haciendas Villages.[54]

2. Mediante *Resolución*, emitida el 3 de julio de 2025, se le impuso a DAVI el pago de noventa dólares ($90.00) por concepto de costas, gastos y honorarios de abogado a favor de Haciendas Villages.[55]

3. Mediante *Resolución*, emitida el 14 de julio de 2025, se le impuso a DAVI el pago de cuatro mil cuarenta y cinco dólares con veintiocho centavos ($4,045.28) por concepto de costas, a favor de CCAM.[56]

4. Mediante *Resolución*, emitida el 14 de julio de 2025, se le impuso a DAVI el pago de noventa dólares ($90.00) por concepto de costas, gastos y honorarios de abogado, a favor de Haciendas Villages.[57]

5. Mediante *Resolución*, emitida el 14 de julio de 2025, se le impuso a DAVI el pago sesenta y cuatro mil cuatrocientos noventa y dos dólares con seis centavos ($64,492.06) por concepto de costas, gastos y honorarios de abogado a favor de Hacienda Villages.[58]

6. Mediante *Resolución*, emitida el 14 de julio de 2025, se le impuso a DAVI el pago de cincuenta y cinco mil trecientos veintinueve dólares con sesenta y siete centavos ($55, 329.67) por concepto de honorarios de abogado a favor de CCAM.[59]

7. Mediante *Resolución* emitida el 14 de julio de 2025, se le impuso a DAVI el pago de ciento cuatro mil seiscientos veinticinco dólares ($104,625.00) en

---

[51] Véase, SUMAC TPI, Entrada Núm. 261.
[52] Véase, SUMAC TPI, Entrada Núm. 264.
[53] Véase, SUMAC TPI, Entrada Núm. 266.
[54] Véase, SUMAC TPI, Entrada Núm. 262.
[55] Véase, SUMAC TPI, Entrada Núm. 263.
[56] Véase, SUMAC TPI, Entrada Núm. 265.
[57] Véase, SUMAC TPI, Entrada Núm. 267.
[58] Véase, SUMAC TPI, Entrada Núm. 268.
[59] Véase, SUMAC TPI, Entrada Núm. 269.

concepto de honorarios de abogado y noventa dólares ($90.00) en concepto de costas a favor de MG.[60]

En desacuerdo con los referidos dictámenes, el 28 de julio de 2025, DAVI presentó *Solicitud de Reconsideración* mediante la cual impugnó las cuantías previamente esbozadas.[61] Evaluado este documento, el 29 de julio de 2025, el foro primario declaró *No Ha Lugar* la solicitud de reconsideración presentada por la Apelante-Peticionaria.[62]

Así las cosas, el 13 de agosto de 2025, DAVI presentó un recurso de apelación, en el caso TA2025AP00239. Por virtud del aludido recurso, la Apelante-Peticionaria apeló la *Sentencia* emitida y notificada el 25 de junio de 2025, y formuló los siguientes señalamientos de error:

> Primer Error: Erró el TPI al desestimar la Demanda Enmendada de DAVI y no reconocer los incumplimientos por parte de CCAM y MG que dan lugar a la rescisión de la Escritura de Servidumbre
>
> Segundo Error: Erró el TPI al declarar con lugar la Reconvención de CCAM y condenar a DAVI al pago de $232,447 más intereses.
>
> Tercer Error: Erró el TPI al concluir que DAVI había incurrido en temeridad y condenarlo al pago de $25,000 a favor de las apeladas.

Inconforme con lo anterior, el 28 de agosto de 2025, DAVI presentó *Recurso de Certiorari* en el caso TA2025CE00372. Mediante este recurso solicitó la revisión de los dictámenes relacionados a la concesión de costas y honorarios de abogado[63] y formuló el siguiente señalamiento de error:

> Erró el TPI al conceder honorarios adicionales a las codemandadas por temeridad bajo la Regla 35.1 y 44.1 de Procedimiento Civil, en contravención de las propias Reglas y del Debido Proceso de Ley.

---

[60] Véase, SUMAC TPI, Entrada Núm. 270.

[61] Véase, SUMAC TPI, Entrada Núm. 271.

[62] Véase, SUMAC TPI, Entrada Núm. 272.

[63] En su recurso de *certiorari*, DAVI expuso lo siguiente: "la parte apelante respetuosamente solicita que este Honorable Tribunal revoque las Resoluciones (Ent. ## 262, 268, 269 y 270) y en su lugar deniegue las mociones de las recurridas (Ent. ## 258, 259 y 261)". Véase, SUMAC TA, en el caso TA2025CE00372, Entrada Núm. 1, pág. 21.

Junto a la solicitud de *certiorari*, DAVI presentó *Solicitud de Consolidación* en la que requirió la consolidación de los casos TA2025CE00372 y TA2025AP00239 de conformidad con la Regla 80.1 (D) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025). El 3 de septiembre 2025, esta Curia emitió *Resolución* en la cual consolidó ambos recursos.

Posteriormente, el 15 de septiembre de 2025, CCAM y Haciendas Village presentaron, cada uno, sus respectivos *Alegato en Oposicion* [sic] *de la Parte Apelada*. Igualmente, el 16 de septiembre de 2025, MG presentó *Alegato en Oposicion* [sic] *de la Parte Apelada*. Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.

### A. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers*, 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media*, 215 DPR___ (2025) 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*. No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de manera preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Soto y otros v. Sky Caterers*, supra.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo estableció el estándar específico que debe utilizar este Foro al revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. A esos efectos, el Tribunal Supremo ha dispuesto que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. V. M. Cuebas, supra,* pág. 118. "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. V. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra*,* pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Tit. v. Rocca Dev. Corp., et als.,* 215 DPR___ (2025) 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

### *B. Memorando de Costas*

En nuestra jurisdicción, se reconoce la concesión de costas a la parte cuyo favor se resuelva un pleito, las cuales serán otorgadas conforme lo regula la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V. R. 44.1. Véase, *PR Fast Ferries et al. v. AAPP*, 213 DPR 103, 115-116 (2023). Así pues, nuestro ordenamiento jurídico contempla como costas aquellos gastos necesarios, incurridos y razonables. *Íd.* pág. 116.

Por otro lado, la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, establece expresamente lo siguiente:

(a) *Su concesión.* — Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

Dado que el lenguaje antes transcrito reconoce el derecho de la parte prevaleciente a recobrar las costas razonables y necesarias en las que incurrió durante el litigio, "una vez reclama su pago, la imposición de costas a la parte perdidosa es mandatoria". *ELA v. Ojo de Agua Development*, 205 DPR 502, 528 (2020).

A esos efectos, la Regla 44.1(b) de Procedimiento Civil de 2009, *supra*, provee a la parte prevaleciente un término de diez (10) días, contados a partir de la notificación de la sentencia, para que presente y notifique a las demás partes un memorando de costas, el cual debe estar juramentado o certificado por su representante legal, con todas las partidas de gastos y desembolsos incurridos que a su entender son correctas y fueron necesarias para la tramitación del pleito.

Además de lo anterior, la Regla 44.1 de Procedimiento Civil, *supra*, establece que, cualquier parte que no esté conforme con las costas reclamadas, dispondrá de un término de diez (10) días, contados a partir de la notificación del memorando de costas, para presentar su escrito en oposición. Véase, Regla 44.1(b) de Procedimiento Civil, *supra*. Los términos dispuestos en esta regla son de naturaleza jurisdiccional, por lo que el foro primario carece de facultad para extenderlos. *ELA v. El Ojo de Agua Development, supra.*

Además de lo anterior la Regla 44.1 establece que, cualquier parte que no esté conforme con las costas reclamadas, dispondrá de un término de diez (10) días, contados a partir de la notificación del memorando de costas, para presentar su escrito en oposición. Véase, Regla 44.1(b) de Procedimiento Civil, *supra*. Los términos dispuestos

en esta regla son de naturaleza jurisdiccional, por lo que el foro primario carece de facultad para extenderlos. *ELA v. El Ojo de Agua Development, supra.* Del mismo modo, la Regla 35.1 de Procedimiento Civil, supra, dispone que "[e]n todo caso en que la sentencia que obtenga finalmente la parte a quien se le hizo la oferta sea igual o menos favorable, ésta tendrá que pagar las costas, los gastos y los honorarios de abogado incurridos con posterioridad a la oferta".

### C. *Honorarios de Abogado por Temeridad*

Cuando una parte o su representación legal proceda con temeridad o frivolidad, será deber del tribunal imponerle "el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta". 32 LPRA Ap. V, R. 44.1(d). A esos fines, "[e]l concepto temeridad es amplio". *Torres Montalvo v. Gobernador ELA,* 194 DPR 760, 778 (2016). Nuestro Tribunal Supremo lo "ha descrito como un comportamiento que incide en los procesos judiciales y afecta, tanto el buen funcionamiento de los tribunales, como la administración de la justicia". *Íd.* El propósito "es penalizar al litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir, innecesariamente, las molestias, los gastos, trabajo e inconvenientes de un pleito. *Martínez Maldonado v. CONSERVE,* 215 DPR__(2024) 2024 TSPR 125, pág. 18.

Por ejemplo, el Tribunal Supremo ha considerado suficiente para la existencia de temeridad:

> (1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación. *CORP v. SPU,* 181 DPR 299, 342 (2011) (Citas omitidas).

Esto descansa en la discreción del tribunal, que resolverá considerando los siguientes factores: "(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados". *Íd.*, págs. 342-343. Por lo tanto, "[l]a evaluación de si ha mediado o no temeridad recae sobre la sana discreción del tribunal sentenciador y solo se intervendrá con ella en casos en que ese foro haya abusado de tal facultad". *Maderas Tratadas v. Sun All. Et al.*, 185 DPR 880, 926 (2012).

### D. Falta de parte indispensable

En nuestro esquema procesal, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, regula la figura de parte indispensable:

> Las personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada.

Según la interpretación jurisprudencial, la parte indispensable es aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, "que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos" (citas omitidas). *Inmob. Baleares et al. v. Benabe et al,* 214 DPR 1109, 1120 (2024). Así pues, "[u]na parte se convierte en indispensable cuando la controversia no puede adjudicarse sin su presencia ya que sus derechos se verían afectados". *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019).

Por su trascendencia, "la sentencia que se emita en ausencia de parte indispensable es nula". *García Colón et al. v. Sucn. González*, 178 DPR 527, 550 (2010). Si no está presente en el litigio se trasgrede el debido proceso de ley del ausente. *Rivera Marrero v. Santiago Martínez, supra,* pág. 479. Por tanto, el planteamiento de falta de indispensable puede presentarse en cualquier momento, lo que incluye que se presente por primera vez en apelación o incluso el

tribunal puede levantarlo motu *proprio. Inmob. Baleares et al. v. Benabe et al, supra* pág. 1121. De reconocerse que una parte indispensable está ausente debe desestimarse la acción legal, sin embargo, tal proceder no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 224 (2007).

### III.

### A. TA2025AP00239

En la controversia que nos ocupa, DAVI nos solicita que revoquemos la *Sentencia* dictada y notificada por el foro primario el 25 de junio de 2025, en la cual desestimó la *Demanda Enmendada* presentada por esta parte y, a su vez, declaró *Ha Lugar* la reconvención instada por CCAM. En su primer señalamiento de error, la parte Apelante-Peticionaria esboza que el foro primario incidió al desestimar la *Demanda Enmendada* y no reconocer los incumplimientos incurridos por CCAM y MG, los cuales dan lugar a la rescisión de la escritura de servidumbre en controversia. Como segundo error, esgrime que el foro primario no debió conceder la reconvención presentada por CCAM. Finalmente, como tercer señalamiento de error, alude que el foro primario erró al concluir que DAVI fue temerario. Veamos.

Previo a entrar a los méritos del caso, es necesario atender el planteamiento jurisdiccional expuesto por CCAM y MG en sus correspondientes solicitudes de sentencia sumaria. Estas partes sostienen que la *Demanda Enmendada* debe desestimarse debido a que faltan partes indispensables en el pleito, pues no se acumularon en el caso a los residentes de Haciendas Village, al Municipio de Caguas y a la Autoridad de Carreteras. Sin embargo, tras realizar una evaluación sosegada de los planteamientos de las partes respecto a este argumento, somos del criterio de que, en el caso de marras, no procede la alegación de falta de parte indispensable.

Según se desprende del expediente de autos, en la *Demanda Enmendada* se solicita la cancelación de la escritura de servidumbre otorgada y la ejecución del pagaré conformado entre las partes de epígrafe. Por tanto, el Municipio de Caguas, ni la Autoridad de Carreteras fueron partes de la causa de acción ante nuestra consideración. Es decir, las causas de acción presentadas por la Apelante-Peticionaria van dirigidas en contra de los Apelados-Recurridos exclusivamente, quienes sí participaron en la otorgación de los negocios jurídicos mencionados y quienes, presuntamente, adquirieron ciertas obligaciones por virtud de dichos documentos. A tenor con este fundamento, no cabe hablar de falta de parte indispensable, toda vez que las entidades concernidas en dichos negocios jurídicos son los Apelados-Recurridos. A esos fines, colegimos en que no existe impedimento jurisdiccional nos prive de atender la controversia ante nuestra consideración.

Aclarado lo anterior, procedemos a discutir el primer y segundo señalamiento de error de forma conjunta. Es menester destacar que, dado a que el recurso de epígrafe versa sobre la revisión de un dictamen resuelto por la vía sumaria, le corresponde a este foro revisor realizar un examen *de novo*, tanto de las solicitudes de sentencia sumaria presentadas y sus anejos, así como de las oposiciones instadas. Vale destacar que, en el presente caso, se presentaron varias mociones de sentencia sumarias, las cuáles reseñaremos a continuación conjuntamente con los respectivos escritos de oposición.

    a.    CCAM presentó solicitud de sentencia sumaria el 5 de octubre de 2023 solicitando que se concediera los remedios requeridos en la reconvención presentada por esta parte.[64] El 1 de diciembre de 2023, DAVI presentó oposición a esta moción.[65]

    b.    Haciendas Village presentó solicitud de sentencia sumaria el 17 de noviembre de 2023 solicitando

---

[64] Véase, SUMAC TPI, Entrada Núm. 181.
[65] Véase, SUMAC TPI, Entrada Núm. 196.

desestimación de la *Demanda Enmendada.*[66] El 29 de diciembre de 2023, DAVI presentó escrito en oposición a esta moción.[67]

c. MG presentó solicitud de sentencia sumaria el 30 de noviembre de 2023 solicitando desestimación de la *Demanda Enmendada.*[68] El 29 de diciembre de 2023, DAVI se opuso a esta moción.[69]

d. DAVI presentó solicitud de sentencia sumaria el 30 de noviembre de 2023 solicitando que se concediera los remedios contenidos en la *Demanda Enmendada.*[70] El 21 de diciembre de 2023, tanto CCAM como Haciendas Village se opusieron por separado a esta moción.[71] Por su lado, MG presentó oposición el 16 de enero de 2024.[72]

e. DAVI presentó solicitud de sentencia sumaria el 30 de noviembre de 2023 solicitando que se desestimara la reconvención instada por MG.[73] MG presentó escrito en oposición el 22 de diciembre de 2023.[74]

Tras efectuar un ponderado análisis del expediente ante nos, surge que, en esencia, **todas las partes** cumplieron sustancialmente con las formalidades establecidas en la Regla 36 de Procedimiento Civil, *supra.* En concreto, las dos solicitudes de sentencia sumaria instadas por DAVI, así como las radicadas por CCAM, MG y Haciendas Village incluyeron sus respectivas alegaciones y, de la misma forma, propusieron de forma detallada y enumerada, los hechos que estos entendían como incontrovertidos. Igualmente, todas las partes hicieron referencia distintas piezas de evidencia, entiéndase, declaraciones juradas, deposiciones y documentos para sostener sus argumentos.

De la misma manera, **todos los escritos** en oposición a las solicitudes de sentencia sumaria instadas en el presente recurso hicieron referencia de forma específica a prueba documental, que sustente los hechos que, a juicio de las partes, se encontraban en

---

[66] Véase, SUMAC TPI, Entrada Núm. 191.
[67] Véase, SUMAC TPI, Entrada Núm. 209.
[68] Véase, SUMAC TPI, Entrada Núm. 193.
[69] Véase, SUMAC TPI, Entrada Núm. 212.
[70] Véase, SUMAC TPI, Entrada Núm. 194.
[71] Véase, SUMAC TPI, Entradas Núm. 202 y 204.
[72] Véase, SUMAC TPI, Entrada Núm. 216.
[73] Véase, SUMAC TPI, Entrada Núm. 195.
[74] Véase, SUMAC TPI, Entrada Núm. 205.

controversia. Por tanto, tras realizar un análisis minucioso sobre los documentos que obran en el expediente, resolvemos que **todas las partes** cumplieron esencialmente con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra.*

Nuestro ordenamiento jurídico nos exige que determinemos si existen hechos materiales en controversia que impidan la disposición sumaria de las controversias ante nos. En esencia, de así determinarlo, se expondrán los hechos controvertidos y los que no se encuentran en controversia.

Examinados los planteamientos esbozados, nos corresponde evaluar si en el presente caso, existen controversias de hechos materiales que impidan la resolución del caso por la vía sumaria. Tras realizar un estudio minucioso del expediente del caso, el cual incluye los documentos anejados a todas las solicitudes de sentencia sumaria, así como los escritos en oposición y sus anejos, identificamos **la existencia hechos materiales controvertidos**.

En primer lugar, en lo que respecta a la causa de acción instada por DAVI, **hay cuestionamientos sobre la verdadera intención de los suscribientes al haber otorgado el pagaré por la cantidad de cien mil dólares ($100,000.00) intitulado *Promisory Note*, el 25 de febrero de 2019**. Dicho documento dispone lo siguiente:

> **PROMISE TO PAY**. MG GENERAL CONTRACTORS, INC., a corporation organized and existing under the laws of the Commonwealth of Puerto Rico and CCAM DEVELOPERS, LLC, a corporation organized and existing under the laws of the Commonwealth of Puerto Rico (jointly "Purchasers") in connection to the Deed of Right of Way Easement executed on February 25, 2019 joint and severally promise to pay to DAVI DEVELOPMENT CORPORATION ("Seller), in lawful money of the United States of America, the principal amount of One Hundred Thousand Dollars ($100,000.00) together with interest accrued form the date of this Note at the rate specified below.[75]

Del expediente se desprende que existen discrepancias en cuanto a cuál fue la razón por la que dicho documento se otorgó. En

---

[75] Véase, SUMAC TPI, Entrada Núm. 194, Anejo 6.

concreto, DAVI alude a que MG y CCAM se obligaron a pagar la cantidad de cien mil dólares ($100,000.00) mediante el otorgamiento del *Promisory Note,* mientras que estos sostienen que dicha cuantía se estableció únicamente para efectos del Registro de la Propiedad, por lo que no generaba una obligación de pagos.

Cónsono con lo anterior, la Escritura Pública Núm. 2 intitulada *Deed of Right of Way Easement* otorgada el 25 de febrero de 2019, particularmente, el apartado séptimo del *Deed of Right of Way Easement* establece lo siguiente:

> The Right of Way Easement created in this act is valued at the amount of one hundred thousand dollars ($100,000) exclusively for the purpose of the recording before the Registry.[76]

Así las cosas, el foro primario emitió las determinaciones de hecho 42,43,46, y 48 las cuales versan sobre el costo de cien mil dólares ($100,000.00) propuesto por DAVI por la servidumbre, el rechazo de MG a la solicitud instada por DAVI y la suscripción del pagaré por cien mil dólares ($100,000.00).

Nótese que, surge de la prueba y de las propias determinaciones de hecho emitidas por el foro *a quo*, que es necesario que se ausculte la **intención** de las partes otorgantes de los negocios jurídicos antes mencionados. Esto es, si se otorgó o no el pagaré únicamente con la intención de que constara en esa forma en el Registro de la Propiedad o si DAVI tuvo la intención de cobrar por el uso de la aludida servidumbre. Ante este cuadro, colegimos que es necesario la cerebración de un juicio en su fondo para poder determinar **cuál fue la intención** de las partes suscribientes para otorgar el pagaré intitulado *Promisory Note* y contenido en la Escritura Pública Núm. 2. intitulada *Deed of Right of Way Easement.*

Resulta contradictorio exponer en las determinaciones de hecho que DAVI reclamó a CCAM y MG que la servidumbre tendría un costo de cien mil dólares ($100,000.00) y posteriormente,

---

[76] Véase, SUMAC TPI, Entrada Núm. 194, Anejo 2.

dictaminar que no hay obligación de pago, ya que consta en la Escritura Pública Núm. 2 que fue para propósitos del Registro. Emitir una determinación como esta, bajo un procedimiento sumario, a nuestro entender, lacera el debido proceso de ley de las partes.

Por su parte, la parte Apelante señala en su segundo señalamiento de error, que el foro primario incidió al declarar Ha Lugar la Reconvención interpuesta por CCAM. No obstante, somos del criterio de que, sobre dicha causa de acción instada por CCAM **también existen controversias de hechos que impiden una resolución sumaria**. En esencia, en dicha reclamación, CCAM solicitó que DAVI pagara noventa y ocho mil trecientos sesenta y cuatro dólares ($98,364.00), por concepto de trabajos realizados que serían pagados de forma proporcional. Surge del expediente, que las aludidas obligaciones fueron pactadas entre DAVI y una empresa denominada SIX Development, S.E. Consta que, SIX Development, S.E. le cedió el crédito de noventa y ocho mil trecientos sesenta y cuatro dólares ($98,364.00) a CCAM mediante un acuerdo materializado el 6 de marzo de 2020, el cual fue ratificado por virtud del documento intitulado *Ratificación de Cesión* con fecha del 31 de agosto de 2022.[77]

Ahora bien, no queda claro de los documentos que obran en el expediente, si SIX Development, S.E. **existía al momento de la cesión llevada a cabo el 6 de marzo de 2020**, conforme lo establece el propio documento de cesión. En concreto, Carlos García, representante de SIX Development, S.E. en el documento de cesión, testificó en la deposición llevada a cabo 25 de enero de 2023 lo siguiente:

P. ¿Six Development existe actualmente?
R. No. Ya no.
P. ¿Desde qué fecha no existe?
R. Ay, yo no me acuerdo. Pero tenía que ser...
P. Un más o menos.

---

[77] Véase, SUMAC TPI, Entrada Núm. 181, Anejo pág. 1175-1180.

R. Estoy tratando de acordarme, como 2019, por ahí, '18. Un más o menos.[78]

No empece lo antes expuesto, en la deposición, Carlos García contestó a preguntas en el interrogatorio sometido sobre la fecha de cierre SIX Development, S.E., lo siguiente: "No aplica. Six Development no ha sido cerrada." Cabe destacar que, la contestación al interrogatorio fue juramentada el 6 de julio de 2023.[79]

En fin, a tono con lo antes esbozado, determinamos que en el caso de autos, **existen controversias de hechos materiales que impiden la resolución de este pleito por la vía sumaria**.

Ahora bien, la Regla 36.4 de Procedimiento Civil, *supra*, es, clara en cuanto a la obligación que tienen los tribunales de instancia de formular determinaciones de hechos cuando se deniegan solicitudes de sentencia sumaria. A esos fines, acogemos las determinaciones de hechos contenidas en la *Resolución* emitida el 16 de marzo de 2022.

A su vez, acogemos las determinaciones de hechos formuladas en la *Sentencia* apelada, salvo las determinaciones 47, 48, 52, 56, 57 58, 67, 68, 69, 70 y 71. No acogemos las determinaciones 47 y 48 pues, las mismas giran en torno a cuál fue la intención de las partes al otorgar la escritura de servidumbre, lo cual concluimos es un hecho real en controversia. Tampoco acogemos las determinaciones 52, 56, 57 y 58, pues estas están relacionadas con la escritura de cesión de crédito y la deuda reclamada en la reconvención, los cuales son hechos controvertidos en este caso. Finalmente, rechazamos las determinaciones de hechos 67-71 pues estas versan sobre partes que, como mencionáramos, no son indispensables, lo cual hacen estas determinaciones de hechos irrelevantes.

En fin, a tono con la discusión que precede, corresponde revocar las disposiciones realizadas por el foro primario en la *Sentencia* apelada. Por consiguiente, se devuelve el caso al foro

---

[78] Véase SUMAC TPI, Entrada Número 196, Anejo 7, líneas 4-11.
[79] Véase, SUMAC TPI, Entrada núm. 201, Anejo 3.

primario para la continuación de los procedimientos, primordialmente, la celebración de una vista en su fondo. Toda vez que dispusimos que corresponde atender los hechos en controversia previamente discutidos, no nos encontramos en posición de resolver en los méritos el primer y segundo señalamiento de error esgrimido por DAVI.

Ahora bien, en cuanto al tercer señalamiento de error, determinamos que el foro primario **sí lo cometió.** En este caso, no procede la partida impuesta por el foro primario en la *Sentencia* apelada por concepto de temeridad. Ello, debido a que, a tono con lo previamente discutido, no puede encontrársele a DAVI incurso en conducta temeraria, pues su causa de acción aún posee méritos, por lo que, el mismo no puede considerarse frívolo. En vista de lo anterior, corresponde revocar la imposición de temeridad de temeridad a DAVI.

### B. TA2025CE00372

En el caso TA2025CE00372, DAVI solicita la revocación de varias resoluciones emitidas por el foro primario mediante la cual se aprobaron los memorandos de costas radicados por los Apelados-Recurridos. Así pues, en su único señalamiento de error, la Apelante-Peticionaria, sostiene que el foro primario concedió las costas solicitadas en contravención con las Reglas 35 y 44.1 de Procedimientos Civil, *supra.*

A tono con los criterios que guían nuestra discreción, determinamos expedir el auto de *Certiorari* presentado por DAVI para así entrar en los méritos de su contención. Es regla firmemente reiterada en nuestro ordenamiento jurídico que la parte victoriosa de un pleito tiene derecho a exigir el pago de las costas del litigio. Claro está, esto procede siempre y cuando exista una adjudicación del pleito en cuestión. Empero, en el presente caso, determinamos que procede revocar la *Sentencia* apelada por existir controversias de hechos que impiden la resolución del pleito por la vía sumaria. Ante

esta realidad, los memorandos de costas presentados por los Apelados-Recurridos se tornaron improcedentes, lo cual, a su vez, vuelve ineficaces las resoluciones que las concedieron.

Por tales motivos, es forzoso concluir que, se revocan las Resoluciones contenidas en las Entradas Núm. 262, 268, 269 y 270 del Sistema Unificado de Manejo y Administración de Casos en el caso CG2021CV00215.

**IV.**

Por los fundamentos antes expuestos, en el caso **TA2025AP00239**, **revocamos** el dictamen apelado. En consecuencia, devolvemos el caso ante el foro primario para la continuación de los procedimientos de conformidad con lo aquí resuelto.

De igual forma, en torno al caso **TA2025CE00372**, **expedimos** el auto de *certiorari* y **revocamos** los dictámenes recurridos. En consecuencia, se dejan sin efecto las Resoluciones contenidas en las Entradas Núm. 262, 268, 269 y 270 de SUMAC en el caso el caso CG2021CV00215.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones